Our next case for argument, United States v. Warren, Mr. Bugney, may it please the court, my name is Joe Bugney, I'm with the Federal Defender's Office in Madison, Wisconsin. I present Mr. Warren. There are three issues here on appeal. The second and third issues, we're not asking to stake out any new law, we're quite simply asking this court to apply its precedent. Last night, this is pretty embarrassing, I prepared for all argument as any lawyer should, and I reread Caput's, which is not the seminal decision, but a very thorough decision from this court. And there's a line in there that I didn't quote in my brief, but that actually controls the polygraph question. So I'd like to begin with that. There, this court, in response to the defendant's objections that this condition could allow for the probation office to test a defendant 20 times a year, this court wrote, however, we read this condition as delegating to probation the selection of the treatment provider. Only the treatment provider is authorized to select the types and amounts of testing. That's actually been our position throughout the whole case. The treatment provider, if they say go get the polygraph, Mr. Warren goes and gets the polygraph. But it can't be that the probation office can, under the guise of treatment or some sophistry to that end, makes the polygraph just part of its monitoring. That not only violates Siegel and the statements made there, but clearly violates Caput, and thankfully I did cite to that statement in the briefs in the district court. The same applies to actually the second condition, the no-contact condition. This court spoke very clearly in Thompson and then again in Capus that the no-contact provision is actually a substantial burden. It's not a small thing to put on somebody, and it can only be done under certain circumstances. In Capus, the Juergens is the consolidated case with that. It gave a very clear line. In those cases, there were very troubling facts. One guy said, look, if I'm not around seven, eight-year-olds, then I'm not a worry. You know, you don't have to worry about me. And the other guy stole panties and kept them for 20 years and was photographing kids in the pool. There's nothing even close to that here in Mr. Warren's case. Now that's to say nothing of the choice of sex, you know, whether it's to girls or boys. This condition is absolutely and exactly what the court condemned in Thompson and then again in Capus. The district court ignored both of those We don't believe it's appropriate, and we believe that the court should just stake out its precedent and remand. Now it comes to the third condition. I think it's a big screw loose that worries people. Pardon? It's a big screw loose that worries people. It does. It does. But look, it's been 13 years since his offense. He's done everything a man can do to transform himself. I think that's This was out in California. This was just after Booker, like four years after Booker. That was before people were really departing too far from the guidelines. His guidelines there are 151 to 188, and the judge gave him 60 months. I think it shows a sincere change on his behalf. And the most troubling behavior, and I think it's actually troubling on two levels. Well, the shorter the prison sentence, the more elaborate you can expect the conditions of supervised release to be. I agree with that, but the original conditions of supervised release didn't contain either of So the person who sentenced him, the one who saw the PSR, observed Mr. Warren, knew all the facts, said he doesn't need the no contact provision. He doesn't need the polygraph condition. It's only when he comes to Wisconsin that the probation office says, look, we want him on the same level as everybody else. Now, one, that violates 3523A. That says in this particular circumstance, one judge said he doesn't need it, but we want him to be like everybody else. Well, that's exactly what this court said not to do in Thompson. And the second reason, Your Honor, is I think that the shorter the sentence goes also to the duration of supervised release. He got a fair amount of supervised release, and the strictures that are put on him, we're not asking that he have none. We're not asking that he just have a walk. We're asking that those be tailored to his circumstances and be faithful to this court's precedent. But the real interesting issue, and the one that we're, you know, pushing here, probably for the first case, is the travel condition. Well, that's trivial. Why worry about the travel condition? All he has to do is ask someone, can I go to Milwaukee or something? No big deal. That could be the same response to any one of the conditions in Thompson. If he's asked and he's denied, what's the standard for denying it? Is a brewer game, you know, like, is that an okay reason? Are there going to be kids there? Can I go to Summerfest, which is the big, you know, summer festival? Well, all he has to do is he has to ask his probation officer. Now, if the probation officer gives unreasonable answers, he can ask the judge for, to alter the condition, right? Well, I mean, that puts a high onus on him. One, you have to, you're working high. We don't know what the probation officer is going to do. If the probation officer really impedes his life gratuitously, then he'll file up with the judge, say, you know, relieve me from this condition, or at least from this probation officer. In hundreds of cases, I've never seen that happen. Most of the people suck it up and eat it. It's for the same reason that they eat all the other conditions, that until two years ago, people started challenging, because it's a lot easier to go along to get along. But when this court says, look, we're going to infringe somebody's rights, you have an absolute right to travel, you have a constitutional right to do that, and we're going to infringe upon it, it's got to be circumspect. It can't be, all right, well, if it gets too bad, if you couldn't go to the Springsteen concert, but you could go to the brewer game, that's not that unreasonable, is it? Now, I've had clients who had denial of travel to go to vacations, and it's like, well, look, don't make a big deal out of it. You just got to take a knee. Being under federal supervision often means taking a knee, and it shouldn't be that way. If there's a reason that someone shouldn't be allowed to travel outside the district, then it should be stated. They're worried about this guy because of his past, you know, and they don't know what he's going to go to. But it's hard to decide an issue like this officer or the government lawyers say about this condition. They both wanted it. I know, did they give a reason? No, just that every, the same ones are repeated in the district courts. Pardon? In the district court's order for the same reasons that are stated there. It's easier to keep tabs on them. We have certain jurisdiction in the Western District of Wisconsin, which doesn't speak to... Do they refer to the fact that this is a sex offender? Yes. Well, that's the type of person you want to keep tabs on. And you're allowed to keep tabs on them. It's just a question. Yeah, well, one of the ways of keeping tabs is to have the person ask for permission if he leaves the district, right? And another way is to give notice. You get to ask him, you know, where are you going? Sure, and the condition could be give notice. If the condition was you must give notice anytime you're leaving the jurisdiction, the same thing is accomplished, but in that case, you're not infringing against constitutional rights. There is no, no, and there's no standard list. What is going... Why don't you say, give notice? Yes. If I were to... Well, then the probation officer can say, thanks for telling me I'm not letting you go, right? What authority would he have to not let you go? Well, come on, what's the point of the notice? So he can be followed by the probation officer? It's the same point of you want to keep tabs on it. That's very unpersuasive. Let me move to another argument then. So the other reason that you want to do this is actually not just for Mr. Warren, but for everybody else. What is the standard that's going to guide? That's the key to Thompson and Siegel. If there's a standard list condition, if we have to look back, we have nothing that will guide what probation, one probation officer from another, there needs to be a standard. Well, as you say, you got a short sentence, and that justifies, you know, more in the way of conditions of supervised release. And that... We emphasize, you know, these go together. They're different ways of controlling a person or punishing a person. I don't think that trade-off was here. I mean, one, there was nothing in any of the documents. Two, it was done so far before Taylor and Siegel were on the radar. Three, it was in a different circuit. That's not anything a part of the case where you'd make that trade-off. Shorter sentence, more probation, and much tougher conditions. But that wasn't what was happening in this case. And it's wrong to impute that kind of logic into this case. There's nothing in Mr. Warren other than the fact of conviction that says... That's a big fact. It is a big fact, but it has to be balanced against every other part of his characteristics. You know, you talk to probation officers about sex offenders, and they regard them as particularly difficult because they're acting under compulsion. You don't make a voluntary choice to have sex with little girls or something. That's a deep-rooted psychiatric problem. And so, you know, the government probation service bends over backwards. I mean, look at Illinois. Do you have something like the Illinois law? You do, yeah. Wisconsin does. About how after a sex offender serves his prison sentence, he can be tried by a civil jury and sent to a treatment, what do they call it, a treatment and detention center for the rest of his life? We do. You have that. The civil commitment. And that's also for the fact of the feds. The feds have the same thing. It has to be a showing of dangerousness. Now, Mr. Warren has no hands-on offense. Right, and he's not being sent... What is it? Ours is Rushville. What is yours? There's Boscoville, and then there's another one up by... There are more than one? Yeah, in the central part of the state. But Mr. Warren, there's no hands-on offense. I know, but he's been spared the detention center. He's just got these restrictions, which seem, I don't know, there's kind of something that would be a minor annoyance in a person's life. It could be a minor annoyance, but the polygraph condition and the no contact, those aren't minor annoyances. Those are actually just... They violate this court's precedent, but they're also to the point where they cripple a man in what he can do. It depends how... If the lie detector test is given every day, yes, but if it's given once a month, what's the big deal? If you have a lie detector test for 10 minutes or something, what's the deal? I don't think they're 10 minutes long, but also if the treatment provider asks for it, that's one thing. If it's another thing, if it's just a matter of let's just keep tabs on him, let's just have compliance. Well, keeping tabs on someone who's gotten a short prison sentence for serious criminal conduct sounds sensible to me. Then we just become a state of watching over everyone, and probation has more power than what this court and the Congress has previously given them. So, Your Honor, you had a question? But you think the right to travel is the most significant here, apparently. I thought it was more of a psychological evaluation, which is this guy's got problems and maybe still has them, so that might be something. But the travel, that's your main objection. You're going to have some kind of supervised release, right? Yes. And there's got to be some provisions in supervised release. Maybe there's some that could be better or worse or what. Your main concern is the right to travel. You say you can live with the other two. Is that what you're saying? No, no. You don't like any of them. I don't want any of them. If I have to walk away with a win on two, I'm choosing polygraph and no contact. But those are also the clearest winners. I mean, part of it, I fell on the sword with Kappus. It's pretty embarrassing. There's a money line in a case. You cite to most of the really good cases, you're in sight to that case, and then you fail to cite the really great language that contradicts the whole district court's opinion. So that's why I led with that. I don't think those are really too much in dispute. I think if you faithfully apply Siegel, Thompson, and Kappus, I win on those latter two. The real one where I'm pushing the envelope, that's travel. And travel is one where, like, is he unsympathetic? No. You know, like, are the reasons keep tabs on him? Clearly. But this condition has problems. There is no standard for, what about a white-collar guy? Let's say a white-collar person. When can he travel to Chicago? When can he go over to see the locks in the Mississippi? If there's nothing in there that guides what's going to be allowed by probation, this is something that has to change. This is the kind of case that it could change in if it doesn't change. So you have no travel? Mr. Bugney, would you have us eliminate that ever as a condition? I don't think you ever could. And it'd be in two parts. One, the first one, it comes from Congress in the probation statute. So 5563, I think, A. But I don't think this court could do that unless you said it was violent vagueness. So you think we just have to create standards for travel? I agree with that. One, yes. And I think you have to create the standards. I didn't make that facial or, sorry, it'd be an as-applied challenge. But also, the one that Mr. Warren is guided by, that comes from the guidelines. So this court could do that. So, like, travel doesn't really, except for the really bad people. I think we set it to Heinz Flagg, which was like a multi-state fraud ring. You really want to keep tabs on that person. And the other guy, Goodin, who does a multi-state kind of crime spree. I represent one guy right now. I can clearly see why they want to have a no travel condition. But for most people, there's this gray area. And the travel is really a huge restriction. If you're being told no, you can't go on vacation. If you're being told no, you can't go to a Brewer game. No, no, you're not being told that. You're getting permission. But if you're told no by that person, what are you going to do? That person, look, have you dealt with the probation service? They're not mean. They're not prosecutorial. They're part of the judiciary. They're not part of the Department of Justice. Part of it is everybody's nice to Article III judges. Everybody laughs at their jokes. Everybody puts on the best face. When you're the offender that has to appear before them every day, that has to go there and deal with that, it's a different face. Now, are there great probation officers? Yes. Are most of them on balance, just quality human beings who are very reasonable? No question. But we don't assume that at all times every probation officer is going to be reasonable. That's why we set standards. That's why we ask the court to enforce standards. And once those are delegated and those standards are there clear, then everybody can operate. But there is no standard on what can be said yes to and what can be said no to for that travel. And that's the real problem. It's the same problem that this court addressed in Thompson. Over and over, what is going to be allowed? Who are your associates? Who's going to make that determination? If there's no guidance on those points, then really we just have to trust. And it's one of those things that it doesn't have to be a matter of trust when it can be very clearly spelled out. Well, you haven't suggested the guidance principles to apply. Pardon, Your Honor? You haven't suggested a set of principles that should narrow the supervised release conditions. Well, two. I'd offer two. One, when it comes to I think you should give notice. I think notice rather than permission. It still keeps tabs on somebody. The other one, I believe that when it comes to sex offenders, I think of three days. Three days complies with SORNA. SORNA says if you move somewhere for three days, you have to give notice. If you're going to be somewhere, that puts it within that tangle of where are you going to be. Three days is enough. It says if you want that day trip to Milwaukee or that day trip to Schaumburg, go for it. But if you're really going to be somewhere else that we really need to keep tabs on you, three days allows for that. And it puts a kind of a governor upon both the probation officer and upon the offender. It says, look, there needs to be communication. That's what at the heart everybody wants. We want there to be communication between the offender and the probation officer so we can keep tabs. But we don't want it to be the infringement upon his rights too much so that he can't go and do those day trips. So three days, if you're going to be out of the district for more than three days, you have to ask permission. If it's going to be another trip shorter than three days, you have to give notice. Just tell us where you're going to be. That's it. But we're not going to deny it. Now, of course, if he's going to say, I'm going to go to Milwaukee to go buy a computer. So I can go, look, you're not allowed to have a computer, all right? You can't do that. But that would violate other conditions. So I think those would be the guiding principles, Your Honor. Okay. Well, thank you, Mr. Buckley. Ms. Pfluger, yeah. May it please the court, Julie Pfluger from the Western District of Wisconsin. So we're here to discuss those three conditions of supervised release. And the government's position is that there's no procedural error here. So the review would be for substantive error, which is an abuse of discretion. And Judge Conley, district court judge in this matter, gave very specific reasons and took into consideration this court's guidance in imposing all of the conditions. This was a very detailed opinion by the court. And in contrary to what Mr. Bugney said, Judge Conley didn't say, we want him to be like everyone else. He gave very specific reasons for every condition, including these three. He tailored this as the court has instructed our district court judges to do. For travel outside the district, he said this is necessary because this is a child sex offense, that he has accesses to resource. He's a fairly wealthy businessman and he could travel on his own. He has the resources to do that. He needs to be tracked and controlled because of the nature of his offense. We need to protect the public. We need deterrence, specific and general, and that probation statutory duty is to monitor these people. As far as the minors, he said no contact with minors except for, he could have contact with minors if you have permission of the guardian and you tell probation or the incidental exception, of course, if it's a restaurant or Six Flags or something. But Judge Conley put that into place because he said this defendant encouraged others to create new child pornography. He led a board and said, I want new images, which is encouraging new abuse. He also said he'd been found to be looking at websites where you learn how to drug women and there was pictures on his camera of unconscious or sleeping women. Now, we don't know what that was, but it was something to keep in mind. And that's, Judge Conley cited those. Was that outside of the, I think this, whatever he was managing this operation and the phone and adding pictures and things, was that 19 days? That was, Your Honor. That's weird. It was, the website was it was a very short period of time. However, he created this website, this group, he created it, he managed it, he organized the pictures, he encouraged specific types of pictures, as my brief had stated, and then the website was shut down. So it was a very short period of time, but that doesn't diminish that. These pictures came after that? Pictures of the women? Those were on his camera. So I can't give you a date as to when those were created. And this was all things that happened in California well before he was involved with our district, so I don't have further details. But as far as the polygraph condition, Mr. Bugney argues that this is a freestanding condition imposed by probation. It's not. It's tied to treatment. Any polygraph will be, while it will be scheduled by probation so that they can do the administrative part of the polygraph, it's tied to treatment. The polygraph results will be provided to the treatment provider to facilitate treatment. Now one thing that Mr. Bugney has objected to was the initial psychosexual evaluation and polygraph. That's already happened, so that's moot. However, now he's objecting to the ongoing polygraphs. That's strictly tied to treatment and therefore it doesn't violate what this circuit has said. And Judge Connolly specifically said in his reasons that I know the Seventh Circuit is concerned about the treatment implications of this condition. The government feels that Judge Connolly gave specific reasons and we stand on that. In an abuse of discretion there can be a differing of opinion, but we feel the court did not abuse its discretion. If this court feels that it did and would like to remand, we don't have any position on that. Just ask the court to give greater direction on exactly what you would want. And I'd be happy to take any questions. Thank you. Okay, thank you very much Ms. Flugler. Mr. Bugney, do you have anything for me? I would just address two points. One, no treatment provider has ever asked for the polygraph test. So it's very clearly this is just a euphemism for monitoring Mr. Warren. The wisdom of that, that's up to debate. But no one's ever asked for this as part of treatment and a court abuses discretion when this court speaks very clearly on a topic and gives the exact, what it exactly says is no that comes from the treatment provider and then does the opposite. That's an abuse of discretion. To Judge Mannion's question, it was only 19 days that you know it's during a very manic episode for Mr. Warren, but there's a dispute about the drugging of women. Judge Conley made a finding based upon only the government's sentencing memo. That wasn't in the PSR in California. It was objected to by, in his sentencing memo, said look there's no evidence of that. And in fact people get it wrong. You know prosecutors get it wrong, defense attorneys get it wrong. When that kind of fact that's just an outlier out there becomes the hinge and is being objected to, there's real problems with that. You know there's a reason the PSR has to be, the facts have to be beyond a preponderance. We need reliability and if that fact isn't in the PSR and it's just thrown out there haphazardly by the prosecutor and then seized upon, that really infringes his rights. Mr. Mannion, what would you say to the suggestion we get rid of travel, get rid of contact, and just once a month have a polygraph examination. See what your activities were that month. Maybe every 60 days. What if we just had that as a suggestion? Are we horse trading right now? No I'm just asking as a policy question. You know you understandably are concerned about invading the rights of individuals who've had whatever custody time and we want to monitor them in a responsible way but respecting all the things you suggest we should and I agree, travel, contact, you know. We could ask in the last 30 days have you been to a children's zoo? Would that be the kind of probation inquiry that you would think would be reasonable? No, I think that every 30 days, every 60 days, I think it's not. I think you're just trying to... Well you are trying to place the individual in a frame, in a mindset that he or she is being monitored. You know it's like the ankle bracelet, right? I mean we could put that on everybody, right? Sure. But we don't. So the probation department is trying to strike some balance. I'm just, we have a lot of these cases and you know and I'm generally like all my colleagues concerned about where the balance should be. So I didn't, that's why I raised the hypothetical because maybe if we just had a you know in the cloud supervision sort of so to speak of polygraph periodically, CIA officers have to undergo it every five years or whatever but sex offenders maybe we ought to do it a little more frequently. I'm just trying to get to an area where defense counsel understandably want to protect the rights of defendants but we have some public interest that we're trying to also address. And I don't think that's an illegitimate concern. I think you have the balancing is what everybody's afraid of are the little slip-ups. You know we cited to one in our where somebody gets revoked for it. We cited one in Wisconsin case where the guy was in the bathroom with a kid. No, nothing happened but he forgot to report that. Well that became the happening in federal court but that's always the fear and when you deal with that once you've had one or two guys who've gotten revoked and got extended some pretty harsh terms as we noticed Judge Chavez is not on the bench anymore but we can still have some pretty harsh terms of violations of going back to prison. Well we don't want it for those but at the same time we want to protect everybody and how do we find that balance? Well I think the guys in like Capas and Juergens, yeah you can't be around kids. Those guys are what are really scary but on the spectrum of sex offenders you know Warren maybe he's not the most innocuous but he's clearly not the guys who are really creeping us out and that we have to keep behind bars or as Judge Posner said the sexually committed. Now where the balance strikes with that I don't think is one that we have to strap everybody in for the lie detector. You know then that just becomes a euphemism for like all right we're really going to check on you and part of it is people fail for lots of reasons. Well should we to probation officers actions back to a district court? Yeah I mean that becomes a quagmire. Well but is that the way to monitor and individualize into the cases and over time develop some sort of pattern which could evolve into quote standards. Sure then it becomes like a de novo review for each one and you you do have a lot of tension. I mean you know you sat on the district court bench you know that like you sit there and there's so many times that that you have to put your client on this is your ultimate goal. What's your ultimate goal right now? I want to discharge without going to prison and I don't want this guy to jam me up on something little right at the end and so you're like all right I'm not going to do that. Even the guy who I talked about earlier who couldn't go on vacation he was a white collar guy who had one year and his wife was very upset about it but he's like look I just want this one year to go away and I'll do whatever they tell me for that one year. Now those are the types of things where what are you going to see if you're the district court every day and then we you know do we have an evidentiary hearing? The district courts are already pretty burdened. I think that if we just take the wisdom that came from Taylor and Siegel it's like look tailor them and make sure that they're clear and make sure that you apply our court's precedent in capice we can all live that way. Well we we pretty much say try to tailor every case it's just you know it's it's pretty difficult to say more than tailor it you know small detailer. No no I get it I don't know if it really is though because think about this capice you guys spoke so clearly all all the remand has to be is like Judge Connolly we've already spoken to this issue probation doesn't get to choose whether or not he gets a polygraph that goes to the the treatment provider boom that's the end of it the the no contact this is not close to the guy in capice or jurgens end of the story. Who's the treatment provider? It's it's he goes to her I think once every two weeks it's for for different sessions but she hasn't requested a polygraph and that was part of our argument we said look if she asked for it we'll do it. Who assigned her to him? Is this the probation? The probation office. The judge? The probation office said hey do you want you know this is your treatment provider go to go to therapy with him her and that woman has never requested a polygraph. Would it be appropriate for the you know or does it have to be initiated the other way Mr. Bozni? I don't think we'd want to get into that you know I think I think if the probation office did a little wink and a nudge what am I can't really complain too much but that that has to come from her just like the script has to come from her if sometimes the lawyer asks for a letter from the doctor well with a wink and the nudge hey this might help at sentencing you're not going to really question that but the doctor should be the ultimate authority. Thank you your honor. Okay thank thank you Mr. Bozni and